UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| HAYLEY SKELTON and TYLER SKELTON,<br><br>    Plaintiffs,<br><br>v.<br><br>ACTION TRADERS, LTD.; COSTCO WHOLESALE CORPORATION; INFINITÉ CYCLE WORKS, LTD. a/k/a INFINITY CYCLE WORKS LTD a/k/a INFINITY CYCLEWORKS; TIANJIN GOLDEN WHEEL X-D BICYCLE CO. LTD.; and HANGZHOU JOY KIE IND. & TRAD. CO. LTD.<br><br>    Defendants. | CIVIL ACTION NO.<br>1:19-cv-2825-JPB |

## **ORDER**

This matter comes before the Court on the Motion to Exclude Opinions of John D. Schubert filed by Infinité Cycle Works, Ltd.; Action Traders, Ltd.; and Costco Wholesale Corporation (collectively, "Defendants") [Doc. 102]. This Court finds as follows:

### **BACKGROUND**

Hayley Skelton was involved in a bicycle accident on May 20, 2018, in Atlanta, Georgia. Central to this case is the cause of the accident and, more

specifically, whether the subject bicycle contained a defect that caused the bicycle's front fender stay to lock up the front wheel.

Hayley Skelton and Tyler Skelton ("Plaintiffs") filed this action on June 20, 2019. [Doc. 1]. The operative complaint is the Second Amended Complaint, filed on March 10, 2020.[1] [Doc. 43]. The Second Amended Complaint asserts claims for strict products liability, breach of warranty, negligence and failure to warn. Id. at 6–11.

Plaintiffs retained John Schubert as an expert witness to provide an opinion on the cause of the bicycle crash. Schubert provided an expert report dated February 9, 2022, in which he opines that a manufacturing/assembly defect and design defect caused the crash. See [Doc. 102-1, p. 4]. On April 18, 2022, Defendants moved to exclude Schubert's testimony for failing to meet the requirements of Rule 702 of the Federal Rules of Evidence and the standard set forth in Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993). [Doc. 102]. The motion is ripe for review.

---

[1] The Second Amended Complaint adds two parties, Tianjin Golden Wheel X-D Bicycle Co. Ltd. and Hangzhou Joy Kie Ind. & Trad Co. Ltd. [Doc. 43]. They are not parties to the motion before the Court and have not otherwise appeared in this action.

## LEGAL STANDARD

When assessing the admissibility of expert evidence, the Court "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable," Daubert, 509 U.S. at 589, and that a testifying expert is qualified "by knowledge, skill, experience, training, or education," Fed. R. Evid. 702.  To that end, the Court fulfills a gatekeeping role "to ensure that speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation 'expert testimony.'"  Rink v. Cheminova, Inc., 400 F.3d 1286, 1291 (11th Cir. 2005) (quoting McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1256 (11th Cir. 2002)).  The Court assesses the admissibility of expert evidence under a three-prong test:

> Expert testimony may be admitted into evidence if:  (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 562 (11th Cir. 1998) (footnote omitted); see also United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (summarizing these three "basic requirements" as "qualification, reliability, and helpfulness").  "The party offering the expert has the burden of

satisfying each of these three elements by a preponderance of the evidence." Rink, 400 F.3d at 1292.

Evidence that meets the requirements of admissibility under Daubert and Rule 702 may nonetheless be excluded under Federal Rule of Evidence 403. Frazier, 387 F.3d at 1263 (explaining that otherwise admissible expert testimony may be excluded under Rule 403 because of the "powerful and potentially misleading effect" of expert evidence). The Court may exclude relevant evidence under Rule 403 if its probative value is substantially outweighed by a risk of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Simply put, expert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse." Frazier, 387 F.3d at 1263.

Defendants contend that Schubert's testimony should be excluded on all three grounds: because he is insufficiently qualified, his opinions are unreliable and his testimony would not assist the trier of fact. Defendants also argue that Schubert's opinions should be excluded under Rule 403. The Court discusses these arguments below.

## ANALYSIS

### A.  Whether Schubert Is Qualified

The first prong of the analysis for admitting expert testimony "requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony." Jack v. Glaxo Wellcome, Inc., 239 F. Supp. 2d 1308, 1314 (N.D. Ga. 2002).  An expert "may be qualified in various ways," including by "scientific training or education" or by "experience in a field." Frazier, 387 F.3d at 1260.  An expert who relies on experience for his qualifications "'must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" Id. (quoting Fed. R. Evid. 702 advisory committee's note (2000 amends.)).  "After the district court undertakes a review of all of the relevant issues and an expert's qualifications, the determination regarding qualification to testify rests within the district court's discretion." Clena Invs., Inc. v. XL Specialty Ins. Co., 280 F.R.D. 653, 661 (S.D. Fla. 2012).

Defendants argue that Schubert lacks the necessary qualifications to provide expert testimony in this case.  They assert that the relevant issues on which he would testify "regard the physical and mechanical interaction between . . . the subject bicycle's parts—namely the front wheel, front fender, front fender stay,

5

[and] the corresponding attachment hardware." [Doc. 102, pp. 16–17]. Defendants contend that because Schubert lacks "experience, specialization, or scientific training as an engineer, scientist, or physicist" and has "no certifications or licenses in accident reconstruction," he is not qualified to offer an expert opinion on these issues. Id. at 17. Defendants further argue that Schubert's experience in the field of bicycles is inapplicable to the opinions he would offer in this case. Id.

Plaintiffs respond that Schubert is sufficiently qualified, noting that he has served as an expert in bicycle crash cases numerous times.[2] [Doc. 105, p. 10]. Plaintiffs argue that Schubert's experience as an industry consultant and journalist provides him with the requisite experience to testify as an expert, particularly because "cycling magazines routinely cover issues such as new and old bicycle design, maintenance, crashes, road tests, and cycling techniques." Id. at 11. While

---

[2] The Court notes that much of Plaintiffs' response to the Motion to Exclude compares Schubert with Defendants' expert witness. For example, Plaintiffs argue that Defendants' own expert "did not use any specialized scientific, engineering or reconstruction techniques in reaching his opinions," which suggests "that such knowledge is not required to provide an expert opinion on the cause of this crash." [Doc. 105, p. 10]. Even if comparing the parties' experts has illustrative value, it is ultimately Plaintiffs' burden to show, by a preponderance of the evidence, that Schubert meets the requirements for admitting expert testimony. Rink, 400 F.3d at 1292. Accordingly, the Court focuses its analysis on Schubert individually, rather than on Schubert as he compares to Defendants' expert.

Defendants argue that Schubert has insufficient experience with fenders, the bicycle part at issue in this case, Plaintiffs counter that the vast majority of bicycles do not have fenders.  Id. at 12.

Having reviewed the parties' arguments, Schubert's report and his background, the Court believes that Schubert is sufficiently qualified by experience to provide expert testimony in this case.  Schubert has been employed since 1988 as a bicycle industry consultant, and in this role, he assists major bicycle companies in product design.  See [Doc. 102-1, p. 12].  Schubert has worked as an expert witness and consultant in litigation concerning bicycle accidents and bicycle industry practices since 1981.[3]  Id.  In his capacity as a journalist for various cycling magazines, a role Schubert holds now and has held since 1979, he has performed technical road tests of more than two hundred bicycles, which involves test-riding the bicycles and analyzing their design.  Id. at 13.  Schubert also began his career as a bike mechanic, where he serviced approximately 1,000 bicycles.  Id. at 17.

Defendants contend that the issue in this case, the cause of the bicycle accident, requires specialized knowledge of physics and mechanics.  In the Court's

---

[3] Schubert disclosed that he has not testified in court or at a deposition in the prior four years.  [Doc. 102-1, p. 20].

7

view, inasmuch as this case concerns the cause of the bicycle accident, it also concerns whether the bicycle contained any kind of defect—and on that question, it does not appear that specialized scientific knowledge is necessary. Instead, significant experience in the bicycle industry, like Schubert's, suffices to render an expert opinion. The Court therefore finds that Plaintiffs have satisfied their burden to show that Schubert is sufficiently qualified as an expert in this matter.

### B.     Whether Schubert's Opinions Are Reliable

When considering whether an expert's opinions are reliable, the Court has "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Chapman v. Procter & Gamble Distrib., LLC, 766 F.3d 1296, 1306 (11th Cir. 2014) (quoting Daubert, 509 U.S. at 597). A number of factors inform whether an expert's opinion is reliable, including "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1341 (11th Cir. 2003); see Frazier, 387 F.3d at 1262 ("The same criteria that are used to assess the reliability of a scientific opinion may be used to evaluate the reliability of non-scientific, experience-based

testimony."). Because each factor may not be relevant in every instance, however, district courts "'have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.'" Frazier, 387 F.3d at 1262 (quoting Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999)); see, e.g., Am. Gen. Life Ins. Co. v. Schoenthal Fam., LLC, 555 F.3d 1331, 1338 (11th Cir. 2009) ("A district court may decide that nonscientific expert testimony is reliable based 'upon personal knowledge or experience.'" (quoting Kumho Tire, 526 U.S. at 150)). That said, "nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., 402 F.3d 1092, 1111 (11th Cir. 2005) (quoting Mich. Millers Mut. Ins. Corp. v. Benfield, 140 F.3d 915, 921 (11th Cir. 1998)).

Defendants claim that Schubert's testimony is unreliable because it is not based upon sufficient facts or data. According to Defendants, Schubert did not show "how his experience led to his ultimate opinion, how this experience was a sufficient basis for this opinion, and how he reliable applied his experience to the facts." [Doc. 102, p. 20]. Defendants also contend that Schubert's testimony about the cause of the accident is speculative and based on erroneous methodology.

9

Id. at 20–23.  Plaintiffs counter that Defendants' arguments on the reliability prong primarily "consist[] of conclusory statements."  [Doc. 105, p. 13].  Plaintiffs note that Schubert conducted an inspection of the bicycle that entailed taking measurements and photographs, examining the front and rear fenders and testing the brakes.[4]  Id. at 5–6.

Defendants seem to argue that Schubert's methodology is flawed because he "presupposes" certain facts about the accident, such as that "he does not believe [Hayley Skelton] committed a safety error while riding the bicycle."[5]  [Doc. 102, p. 18].  Plaintiffs assert that it is undisputed that rider error was not a factor in the accident, and therefore, any assumptions about safety errors do not render Schubert's methodology flawed.  [Doc. 105, p. 13].  Plaintiffs appear to be correct that there is no dispute that rider error did not contribute to the accident.  The Court therefore agrees that assumptions about safety errors do not undermine Schubert's methodology.

---

[4] In the Motion to Exclude, Defendants repeatedly assert that Schubert did not take any measurements of the bicycle.  See, e.g., [Doc. 102, pp. 4, 8, 18, 23].  Schubert testified that he took measurements, [Doc. 105-3, p. 79], although he conceded that he did not measure how long the fender would be if it were straight, [Doc. 102-4, p. 32].

[5] Defendants make this particular argument in the section of their brief addressing Schubert's qualifications, but it appears to speak to the reliability of the methodology Schubert used to reach his opinions.

10

In his expert report, Schubert theorizes that "[a] failed fastener caused this crash" and more specifically that "[a]n attachment bolt on the front fender either fell off or sheared off during the ride." [Doc. 102-1, p. 4].  Defendants argue that Schubert "admitted that he does not actually know how the fender stay fastener or attachment hardware became detached from the fender" or "what the fender stay attachment bolt even looked like either before or after the alleged accident." [Doc. 102, p. 22].  As Plaintiffs note, no one in this case knows how the screw became detached from the fender or what it looked like before or after the accident; it was not recovered from the scene, and no one witnessed the screw become detached. [Doc. 105, p. 16].  In the Court's view, Defendants' concerns are properly addressed by cross-examination because

> the attacks on [Schubert's] opinions largely address accuracy of his conclusions based on his data and tests as well as his own physical observations, and less to the general scientific validity of his methods.  That is what cross-examination and counter-expert testimony will highlight at trial; it is not enough to exclude [his] analysis altogether.

Mizrahi v. Yamaha Motor Corp., U.S.A., No. 17-24484-CIV, 2019 WL 3318527, at *4 (S.D. Fla. July 19, 2019), aff'd sub nom. Mizrahi v. Yamaha Motor Corp., 2019 WL 3315142 (S.D. Fla. July 23, 2019).

Furthermore, Schubert explains in his report that he first learned of the type of crash suffered by Hayley Skelton "close to [forty] years ago" and that it is a

"common topic of conversation among bicycle crash prevention professionals." [Doc. 102-1, p. 6]. It is the Court's understanding that Schubert's substantial experience in the bicycling industry (which includes testing bicycles and consulting on bicycle design) supports his opinion that the "failed fastener" caused the bicycle crash, and this basis renders his opinion sufficiently reliable. Am. Gen. Life Ins. Co., 555 F.3d at 1338 (permitting district courts to find nonscientific evidence reliable on the grounds of the expert's knowledge or experience).

Defendants also claim that Schubert omitted reference to the bent stays of the front fender. [Doc. 102, p. 23]. Plaintiffs counter that Schubert testified about the bent fender stays during his deposition, where he explained his belief that the bending occurred after the accident and was unrelated to the actual mechanism of the crash itself. [Doc. 105, p. 15]. Accordingly, he did not reference the bent stays in his report. Id. at 15–16. Schubert also explained that he did not believe the bent stays were the result of a foreign object entangling with the wheel because he has seen the result of foreign objects entangling with bikes, and the bent fender stays in this case were inconsistent with his prior observations. Id. at 15.

In sum, the Court finds that Schubert's opinions are adequately supported by his experience in the field of bicycling and by his inspection of the subject bicycle. Many of Defendants' arguments on this prong seem directed toward the

persuasiveness of Schubert's testimony, rather than its admissibility, but "it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." Rosenfeld v. Oceania Cruises, Inc., 654 F.3d 1190, 1193 (11th Cir. 2011) (quoting Quiet Tech. DC–8, 326 F.3d at 1341). Indeed, the Court's gatekeeping role "is not intended to supplant the adversary system or the role of the jury: 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" United States v. Ala. Power Co., 730 F.3d 1278, 1282 (11th Cir. 2013) (quoting Allison v. McGhan Med. Corp., 184 F.3d 1300, 1311–12 (11th Cir. 1999)). The Court thus concludes that Plaintiffs have met their burden to show that Schubert's testimony is sufficiently reliable.

**C.     Whether Schubert's Testimony Would Assist the Trier of Fact**

"The final requirement for admissibility of expert testimony under Rule 702 is that it assist the trier of fact." Frazier, 387 F.3d at 1262. Importantly, "expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." Id. But such testimony "will not help the trier of fact," and will thus be inadmissible, "when it offers nothing more than what lawyers for the parties can argue in closing arguments." Id. at 1262–63; see, e.g., Prosper v.

Martin, 989 F.3d 1242, 1249 (11th Cir. 2021) (holding that expert testimony was unhelpful where "it did not offer anything the jury could not discern on its own").

Defendants argue that Schubert's opinions would not assist a jury because he has "looked at the same evidence to be examined by the trier of fact" and "simply made inferences a jury would be capable of making." [Doc. 102, p. 23]. Plaintiffs disagree and argue that Schubert's background in cycling, both as a journalist and an expert witness, position him to explain the pertinent issues to laypersons. [Doc. 105, p. 25].

Schubert's testimony will assist a layperson jury "understand the evidence" and "determine a fact in issue"—namely, whether the bicycle contained a defect that caused the subject accident. Fed. R. Evid. 702(a). The Court disagrees with Defendants that his testimony "simply" makes inferences that are within the capacity of an average juror. The cause of a bicycle accident, specifically as it pertains to the product design of a bicycle, falls outside the realm of a layperson. The Court therefore concludes that Schubert's opinions would be helpful to the trier of fact and that Plaintiffs have met their burden as to the final prong of admissibility.

**D.     Whether Schubert's Opinions Should Be Excluded Under Rule 403**

The Supreme Court of the United States "recognized in Daubert the intricate role of Rule 403 in an expert testimony admissibility analysis when it noted that expert testimony could be 'both powerful and quite misleading because of the difficulty in evaluating it.'"  Allison, 184 F.3d at 1310 (quoting Daubert, 509 U.S. at 595).  Consequently, a district court "may exclude expert opinion evidence, even if relevant, if its probative value is substantially outweighed by the danger of confusion of the issues or misleading the jury."  United States v. Rouco, 765 F.2d 983, 995 (11th Cir. 1985).

Defendants argue that even if Schubert's testimony is admissible under Daubert and Rule 702, his opinions should be excluded under Rule 403.  Defendants contend that Schubert's "failure to accurately understand and articulate the opinions and facts in this case demonstrates the risk that the trier of fact may be misled or confused" by his testimony.  [Doc. 102, p. 26].  Although Plaintiffs did not respond to Defendants' Rule 403 argument, the Court does not view Schubert's testimony as presenting a risk, let alone a substantial one, of confusing or misleading the jury such that it must be excluded under Rule 403.  The Court thus declines to exclude Schubert's testimony on this basis.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Exclude [Doc. 102] is **DENIED**.

**SO ORDERED** this 16th day of March, 2023.

_____
J. P. BOULEE
United States District Judge