UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| HAYLEY SKELTON and TYLER SKELTON,<br><br>    Plaintiffs,<br><br>v.<br><br>ACTION TRADERS, LTD.; COSTCO WHOLESALE CORPORATION; INFINITÉ CYCLE WORKS, LTD. a/k/a INFINITY CYCLE WORKS LTD a/k/a INFINITY CYCLEWORKS; TIANJIN GOLDEN WHEEL X-D BICYCLE CO. LTD.; and HANGZHOU JOY KIE IND. & TRAD. CO. LTD.<br><br>    Defendants. | CIVIL ACTION NO.<br>1:19-cv-2825-JPB |

## ORDER

This matter comes before the Court on the Motion for Sanctions filed by Infinité Cycle Works, Ltd.; Action Traders, Ltd.; and Costco Wholesale Corporation (collectively, "Defendants") [Doc. 111]. This Court finds as follows:

## BACKGROUND

Hayley Skelton and Tyler Skelton ("Plaintiffs") filed this action on June 20, 2019. [Doc. 1]. The operative complaint is the Second Amended Complaint, filed

on March 10, 2020.[1]  [Doc. 43].  The Second Amended Complaint brings claims for strict products liability, breach of warranty, negligence and failure to warn.

The case arises from Hayley Skelton's bicycle accident on May 20, 2018, in Atlanta, Georgia, and her resulting injuries.  Central to this matter is the cause of the accident and, more specifically, whether the subject bicycle contained a defect that caused the bicycle's front fender stay to lock up the front wheel.  At issue now is Defendants' allegation that Plaintiffs spoliated evidence by altering the bicycle.[2]

The bicycle was returned to Plaintiffs on the same day as the accident and has been in their possession since.  [Doc. 111, p. 3].  Plaintiffs provided notice of their pre-suit claim via email on June 11, 2018, and included in that email photographs of the subject bicycle in its post-accident condition.  [Doc. 111-2].  In July, August and September 2018, Plaintiffs exchanged emails with a claims adjuster about potential compensation for their medical bills and about the possibility of settling any claims.  [Doc. 111, p. 3]; see also [Doc. 111-3].

---

[1] The Second Amended Complaint adds two parties, Tianjin Golden Wheel X-D Bicycle Co. Ltd. and Hangzhou Joy Kie Ind. & Trad Co. Ltd.  [Doc. 43].  They are not parties to the motion before the Court and have not otherwise appeared in this action.

[2] This matter initially came to the Court's attention on April 22, 2022, when the parties filed a Consolidated Joint Discovery Dispute Statement.  [Doc. 103].  The Court held a telephone conference on April 28, 2022, and ordered Defendants to file a motion addressing the issue should they wish to pursue sanctions.  [Doc. 104].

The bicycle subsequently underwent various inspections. On March 22, 2019, Michael Lamb, who was retained by Defendants but is not an expert witness in this matter, inspected the bicycle as part of the investigation of Plaintiffs' pre-suit claim. [Doc. 111, p. 8]. Plaintiffs' expert, John Schubert, inspected the bicycle on February 7, 2022. [Doc. 116, p. 5]. Defendants' expert, Garrick Mitchell, inspected the bicycle on March 3, 2022. [Doc. 111, p. 4].

Following his inspection, Mitchell concluded that the bicycle's parts were altered and in a different position than they were as depicted in the photographs taken in June 2018. Id. at 4–5. According to Defendants, a comparison of the photographs shows that "each of the bicycle's front wheel, front wheel quick release, and front fender stay were removed and flipped in the opposite direction on the bicycle between the time Plaintiffs' claim photograph was submitted on June 11, 2018, and when the bicycle was later presented for inspection." Id. at 7.

During their depositions, Plaintiffs testified that to their knowledge, the bicycle had not been altered since the accident. Id. at 9. Specifically, Tyler Skelton testified that he was not aware of any part of the bicycle being touched or changed after the accident and that he did not physically move the bicycle other than picking it up and placing it somewhere, such as in his garage. [Doc. 108-1, p.

96]. Hayley Skelton similarly testified that she was not aware of anyone moving or adjusting the fender or fender stay since the accident. [Doc. 111-6, p. 7].

It is undisputed that the bicycle was in the same condition when all three of the inspections took place: Lamb's inspection on March 22, 2019; Schubert's inspection on February 7, 2022; and Mitchell's inspection on March 3, 2022. See [Doc. 116, pp. 5–6]. In other words, any alterations to the bicycle occurred between Plaintiffs' pre-suit email on June 11, 2018, and Lamb's initial inspection on March 22, 2019. It appears, however, that Mitchell was the first to notice the alterations during his March 3, 2022 inspection.

Defendants filed the instant Motion for Sanctions on May 16, 2022. [Doc. 111]. Defendants contend that Plaintiffs materially altered the bicycle, spoliated crucial evidence and severely prejudiced Defendants "by depriving them of a fair opportunity [to] fully prepare their defense." Id. at 2. Defendants ask this Court to dismiss the case as a sanction.

## LEGAL STANDARD

District courts have "broad discretion" to impose sanctions, including for the spoliation of evidence. Flury v. Daimler Chrysler Corp., 427 F.3d 939, 944 (11th Cir. 2005). "Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or

4

reasonably foreseeable litigation." Graff v. Baja Marine Corp., 310 F. App'x 298, 301 (11th Cir. 2009) (quoting West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999)). "Sanctions for spoliation of evidence are intended 'to prevent unfair prejudice to litigants and to insure the integrity of the discovery process.'" Oil Equip. Co. Inc. v. Mod. Welding Co., 661 F. App'x 646, 652 (11th Cir. 2016) (quoting Flury, 427 F.3d at 944). The Eleventh Circuit Court of Appeals has held that "an adverse inference is drawn from a party's failure to preserve evidence only when the absence of that evidence is predicated on bad faith." Bashir v. Amtrak, 119 F.3d 929, 931 (11th Cir. 1997).

## ANALYSIS

The Court's analysis proceeds in three parts: whether spoliation occurred; if so, whether sanctions are warranted; and if they are, which sanction is appropriate.

**A.   Whether Spoliation Occurred**

The party seeking sanctions for spoliation must establish "three foundational elements" to show that spoliation occurred. Penick v. Harbor Freight Tools, USA, Inc., 481 F. Supp. 3d 1286, 1293 (S.D. Fla. 2020). That party must show that (1) the evidence existed at one time; (2) the other party had a duty to preserve the

evidence; and (3) the evidence was crucial to proving the party's case.[3]  In re Delta/AirTran Baggage Fee Antitrust Litig., 770 F. Supp. 2d 1299, 1305 (N.D. Ga. 2011).  Defendants contend that they have made this showing, and the Court agrees.

The first factor in the spoliation analysis is whether the evidence at issue existed at one time.  The June 2018 photographs show the bicycle in a different state from its condition when examined in March 2022.  Consequently, this factor is met because the unaltered bicycle indisputably existed in June 2018.

The second factor is whether Plaintiffs had a duty to preserve the evidence.  "The duty to preserve relevant evidence must be viewed from the perspective of the party with control of the evidence and is triggered not only when litigation is pending but also when it is reasonably foreseeable to that party."  Ala. Aircraft Indus., Inc. v. Boeing Co., 319 F.R.D. 730, 740 (N.D. Ala. 2017), aff'd, No. 20-11141, 2022 WL 433457 (11th Cir. Feb. 14, 2022).  The bicycle was exclusively in Plaintiffs' possession following the accident.  Plaintiffs' pre-suit claim and

---

[3] Notably, Plaintiffs do not address these factors in their response brief.  See Hudson v. Norfolk S. Ry. Co., 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001) ("When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned.").  Plaintiffs expressly concede that comparing the bicycle as photographed in June 2018 and in March 2022 show several differences but contend that any differences would have little or no effect on the bicycle's operation.  See [Doc. 116, pp. 7–10].

subsequent emails, in which they provide medical bills and inquire about the possibility of settlement, indicate that litigation was reasonably foreseeable. Accordingly, the second factor is satisfied.

The final factor is whether the evidence at issue was "crucial" to Defendants' case.  Little v. McClure, No. 5:12-CV-147, 2014 WL 3778963, at *1 (M.D. Ga. July 31, 2014).  Plaintiffs' claim for strict products liability is premised on the existence of a manufacturing defect and design defect in the subject bicycle, specifically related to the attachment hardware connecting the bicycle's front fender and front fender stay.  The condition of the bicycle immediately following the accident—in particular, the bicycle parts that were altered—is thus central to the case and critical to Defendants' ability to mount a defense.

Because Defendants have made the threshold showing for seeking spoliation sanctions, the Court turns to the question of imposing sanctions.

**B.   Whether Sanctions Are Warranted**

The Eleventh Circuit has directed district courts to consider the following factors when determining whether spoliation sanctions are warranted:

> (1) whether the defendant was prejudiced as a result of the destruction of evidence; (2) whether the prejudice could be cured; (3) the practical importance of the evidence; (4) whether the plaintiff acted in good or bad faith; and (5) the potential for abuse if expert testimony about the evidence was not excluded.

7

Flury, 427 F.3d at 945. The Court considers these factors below.

### 1. Whether Defendants Were Prejudiced

The first question is "the extent of prejudice caused by the spoliation (based on the importance of the evidence to the case)." Oil Equip. Co., 661 F. App'x at 652. Defendants argue that they have been "substantially prejudiced by the spoliation of the bicycle" because "the spoliated parts are directly at issue in Plaintiffs' product liability claims," and the spoliation occurred before Defendants were able to inspect the bicycle. [Doc. 111, p. 14]. Plaintiffs contend that no prejudice occurred because despite the altered condition of the bicycle, Defendants' expert had "no difficulty" determining that the crash was (in his view) caused by a foreign object. [Doc. 116, p. 12]. Plaintiffs also argue that no evidence was destroyed in this case and that all experts "had equal access to the bicycle in its current condition and configuration." Id. at 13.

The Court concludes that the spoliation led to significant prejudice. The bicycle is indisputably the central piece of evidence in this case, and Plaintiffs' claim for strict products liability is based on the allegation that the bicycle is defective. Because of the alterations to the bicycle, Defendants have been unable to inspect it in its condition following the accident. In fact, Mitchell, Defendants' expert, suggested that his opinions on the cause of the accident are expressly

8

premised on the bicycle in its current condition and not as it appears in the June 2018 photographs. More specifically, during his deposition, Mitchell was asked if anything in his expert report indicated that he was unable to determine the cause of the accident because of the changes to the bicycle. [Doc. 108-4, p. 26]. Mitchell responded that his opinions were "based on what [he] saw in the bicycle" and that "the mechanism of the accident" (a foreign object becoming entangled in the front wheel) was "completely consistent with the physical evidence." Id. at 26–27. He then stated the following: "What I wouldn't be able to explain is if I were presented with the bicycle as depicted in Mr. Skelton's [June 2018] photo, then I would be at a loss to explain how that occurred based on what I can see in that photo." Id. at 27. Presumably, then, Mitchell's confidence in explaining the cause of the accident is considerably less when presented with the photographs of the altered bicycle. Accordingly, the alterations have affected Defendants' ability to prepare a defense.

It is true that none of the experts in this case examined the bicycle prior to its alteration. However, this merely suggests that the prejudice suffered by Defendants is perhaps marginally less than it would have been otherwise, not that Defendants suffered no prejudice in the first place. Consequently, the Court finds that Defendants have experienced prejudice from the spoliation at issue.

### 2. Whether the Prejudice Can Be Cured

Having found that Defendants are prejudiced as a result of the spoliation, the next issue is whether this prejudice can be cured. Defendants assert that the prejudice is incurable because the "front fender stay, front wheel, and front wheel quick release have been irreparably altered[,] and there is no way to reliably place them back into their unaltered post-accident condition with any certainty." Id. at 16. Plaintiffs contend that because "no prejudice has been shown, there is nothing to remedy with sanctions." [Doc. 116, p. 15].

Defendants have lost the opportunity to examine or inspect the bicycle in its original post-accident condition. Although photographs exist of the bicycle from that timeframe, Defendants' expert stated in his expert report that the June 2018 photographs had "insufficient resolution and coverage to permit a full analysis." [Doc. 99-20, p. 12]; see Oil Equip. Co., 661 F. App'x at 656 (observing that "photographs . . . are no adequate substitute for direct examination"). The Court thus finds that the prejudice to Defendants cannot be cured other than through the imposition of a sanction.

### 3. Practical Importance of the Evidence

The Court previously discussed the practical importance of the bicycle when analyzing whether it was critical to Defendants' case, and that analysis applies

here. To reiterate, though, the bicycle is the central piece of evidence in this matter. For example, in Graff v. Baja Marine Corp., the plaintiff brought a products liability action premised on a theory that a boat's gimbal housing contained a manufacturing defect. 310 F. App'x 298, 300 (11th Cir. 2009). The plaintiff removed the gimbal housing from the boat without notifying the defendant manufacturers and conducted destructive testing on a portion of the gimbal housing. Id. at 301. The Eleventh Circuit upheld the district court's imposition of sanctions because "the gimbal housing was *the* critical piece of evidence." Id. at 302. Similarly, the bicycle is *the* critical piece of evidence in this case. As such, this factor is satisfied.

  **4.**  **Whether Plaintiffs Acted in Bad Faith**

The fourth factor asks whether the spoliating party acted in bad faith. Flury, 427 F.3d at 945. Although it is clear that some finding of bad faith is a prerequisite to imposing sanctions, "[t]he degree or nature of bad faith necessary for the imposition of spoliation sanctions" is less straightforward. Little, 2014 WL 3778963, at *2. Some courts have read the Eleventh Circuit's decision in Flury as suggesting "that bad faith was only a factor to consider, leading at least one district court to conclude that the Eleventh Circuit no longer strictly requires proof of bad faith as an essential element of spoliation." Id. (citing Brown v. Chertoff, 563 F.

11

Supp. 2d 1372, 1381 (S.D. Ga. 2008)). Other courts have rejected the interpretation that "Flury intended to change the spoliation calculus set forth in Bashir," noting that "the Eleventh Circuit has reiterated that a finding of bad faith is a prerequisite to spoliation sanctions." In re Delta/AirTran, 770 F. Supp. 2d at 1313–14 (citing Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1310 (11th Cir. 2009); Cox v. Target Corp., 351 F. App'x 381, 383–84 (11th Cir. 2009); Slattery v. Precision Response Corp., 167 F. App'x 139, 141 (11th Cir. 2006)).

Although "the degree of bad faith necessary to impose sanctions may not be entirely clear, it is clear that simple negligence is not enough but actual malice is not required." Little, 2014 WL 3778963, at *2. The Court thus considers whether Defendants have shown that Plaintiffs acted with bad faith or, in other words, with a degree of culpability surpassing mere negligence. See Austrum v. Fed. Cleaning Contractors, Inc., 149 F. Supp. 3d 1343, 1350, 1350 n.5 (S.D. Fla. 2016) (concluding that "bad faith" in the spoliation context is characterized by culpability and ensuing prejudice and that a party "may be culpable even though it acts without ill-will").

The record before the Court does not contain direct evidence that Plaintiffs acted in bad faith. A party seeking spoliation sanctions may, however, rely on circumstantial evidence to establish bad faith. FTC v. F&G Int'l Grp. Holdings,

12

LLC, 339 F.R.D. 325, 332 (S.D. Ga. 2021). Plaintiffs have conceded that there are differences between the bicycle as photographed in June 2018 and in March 2022 and that the bicycle has remained in Plaintiffs' exclusive possession. Defendants explain that for the alterations at issue to have occurred, "each of the front fender stay, front wheel, and front wheel quick release, as well as their corresponding attachment hardware, had to be physically removed from the bicycle then reattached to the bicycle in the opposite direction." [Doc. 111, p. 19]. Plaintiffs have not offered an alternative explanation for these changes, expressly stating that they "do not have any explanation as to how or why the earlier and later photographs look differently." [Doc. 116, p. 10]. In the Court's view, these facts—that the alterations to the bicycle require some kind of affirmative action and that the bicycle has been within Plaintiffs' exclusive control—provide sufficient circumstantial evidence that Plaintiffs acted in bad faith, i.e., with a degree of culpability greater than mere negligence. The Court finds that the fourth factor, whether the spoliating party acted in bad faith, is satisfied.

**5.     Potential for Abuse Related to Expert Testimony**

Finally, the Court must consider "the potential for abuse if expert testimony about the evidence [were] not excluded." Flury, 427 F.3d at 945. This factor is primarily directed to products liability cases "where one side might seek to

13

introduce expert testimony about an allegedly defective product that was lost or destroyed before the other side could inspect it." Woodard v. Wal-Mart Stores E., LP, 801 F. Supp. 2d 1363, 1371 n.4 (M.D. Ga. 2011).

Defendants contend that the circumstances in this case raise "the potential for unfair, abusive expert testimony" because "Plaintiffs' expert's opinion relies upon an analysis of the exact parts that were spoliated."[4] [Doc. 111, p. 20]. However, as previously noted, Defendants' expert and Plaintiffs' expert examined the bicycle in its current condition. The Court does not view these circumstances as evincing substantial abuse related to the admission of expert testimony about the bicycle.

Having analyzed the factors set forth above, the Court concludes that they weigh in favor of imposing sanctions for the spoliation of evidence. The Court now considers which sanction to impose.

**C.     Which Sanction is Appropriate**

"A court may sanction a party for spoliation of evidence by (1) dismissing the case, (2) excluding expert testimony, or (3) issuing jury instructions that raise a presumption against the spoliator." Connor v. Sun Tr. Bank, 546 F. Supp. 2d

---

[4] Defendants separately moved to exclude the opinions of Plaintiffs' expert. [Doc. 102]. The Court denied that motion. [Doc. 120].

1360, 1375 (N.D. Ga. 2008).  As the most severe sanction, dismissal is only appropriate if the court finds that the plaintiff acted in bad faith and "that lesser sanctions are inadequate to correct such conduct."  Betty K. Agencies, Ltd. v. M/V MONADA, 432 F.3d 1333, 1339 (11th Cir. 2005).

The Court does not believe that dismissal—Defendants' requested sanction—is appropriate in this case.  The cases cited by Defendants in which the court imposed the sanction of dismissal involved the clear, wholesale and knowing destruction of evidence by a party.  For instance, Flury concerned allegations of a defective airbag following the plaintiff's injuries in a car accident.  427 F.3d at 942.  The plaintiff allowed the subject vehicle to be sold for salvage, despite knowing that the defendant wanted to inspect the vehicle.  Id. at 945.  The defendant had no opportunity to examine the vehicle at all, and therefore, the Eleventh Circuit held that dismissal was the only appropriate sanction.  Id. at 946–47.

Likewise, in Oil Equipment Co., also a products liability case, the plaintiff alleged that an underground storage tank that began to leak was defective.  661 F. App'x at 647.  The defendant believed that the leak was caused by improper installation or by the bedding material on which the tank was placed.  Id.  The defendant thus asked to be notified when the plaintiff dug up and replaced the tank

15

so that the defendant could be part of the inspection. Id. at 648. The plaintiff, however, did not notify the defendant, and by replacing the tank destroyed any evidence related to the bedding material. Id. There, too, the Eleventh Circuit held that dismissal was appropriate. Id. at 659.

Although the Court has determined that spoliation occurred and that sanctions are warranted, this case does not present facts that rise to the level of those in Flury and Oil Equipment Co. Moreover, dismissal is only appropriate "where lesser sanctions will not suffice," Flury, 427 F.3d at 944, and the Court believes that a lesser sanction than dismissal is sufficient in this case. Although the Court declines to dismiss the action, Defendants are entitled to an adverse jury instruction regarding the alteration of the bicycle. See, e.g., Woodard, 801 F. Supp. 2d at 1375 (holding that where the "circumstances" of the spoliation were "sufficient to support an inference of bad faith," the appropriate sanction was a jury instruction on spoliation); Penick v. Harbor Freight Tools, USA, Inc., 481 F. Supp. 3d 1286, 1295 (S.D. Fla. 2020) (in a products liability lawsuit, concluding that an adverse jury instruction was "a fairer sanction and less punitive measure" where neither party had the benefit of directly testing the subject product and both parties had photographs of the product prior to its destruction).

Three categories of adverse jury instructions are available to the Court:

> "(1) a jury may be instructed that certain facts are deemed admitted and must be accepted as true; (2) the Court may impose a mandatory, albeit rebuttable, presumption; or (3) the jury must presume that the lost evidence is relevant and favorable to the innocent party, but also consider the spoliating party's rebuttal evidence, and then decides whether to draw an adverse inference."

Penick, 481 F. Supp. 3d at 1295 (quoting Schultze v. 2K Clevelander, LLC, No. 17-CV-22684, 2018 WL 4859071, at *7 (S.D. Fla. Oct. 4, 2018)).  The Court finds that the second category is most appropriate in this case.  The jury will be instructed to presume that the unaltered bicycle was favorable to Defendants and unfavorable to Plaintiffs, but Plaintiffs may rebut this presumption through the presentation of evidence.  A mandatory but rebuttable adverse jury instruction will address Defendants' prejudice and serve as the proper sanction for the spoliation of evidence in this case.

## CONCLUSION

For the reasons set forth above, Defendants' Motion for Sanctions [Doc. 111] is **GRANTED IN PART**.

**SO ORDERED** this 16th day of March, 2023.

_____
J. P. BOULEE
United States District Judge