UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

HAYLEY SKELTON and TYLER
SKELTON,

      Plaintiffs,

   v.

ACTION TRADERS, LTD.; COSTCO
WHOLESALE CORPORATION;
INFINITÉ CYCLE WORKS, LTD.
a/k/a INFINITY CYCLE WORKS
LTD a/k/a INFINITY
CYCLEWORKS; TIANJIN GOLDEN
WHEEL X-D BICYCLE CO. LTD.;
and HANGZHOU JOY KIE IND. &
TRAD. CO. LTD.,

      Defendants.

CIVIL ACTION NO.
1:19-cv-2825-JPB

## ORDER

This matter comes before the Court on Motions for Summary Judgment filed

by Infinité Cycle Works, Ltd. ("Infinité") [Doc. 99]; Action Traders, Ltd. ("Action

Traders") [Doc. 100]; and Costco Wholesale Corporation ("Costco") [Doc. 101].

This Court finds as follows:

## PROCEDURAL HISTORY

This case arises from Hayley Skelton's May 20, 2018 bicycle accident and

her resulting injuries.  The parties dispute the cause of the accident, namely

whether the subject bicycle contained a defect that caused the bicycle's front fender stay to lock up the front wheel.

Hayley Skelton and her husband, Tyler Skelton, (together, "Plaintiffs"), filed this action on June 20, 2019, against Action Traders, Infinité and Costco (collectively, "Domestic Defendants"). [Doc. 1]. The operative complaint is the Second Amended Complaint, which was filed on March 10, 2020. [Doc. 43]. The Second Amended Complaint adds two parties, Tianjin Golden Wheel X-D Bicycle Co. Ltd. ("Golden Wheel") and Hangzhou Joy Kie Ind. & Trad Co. Ltd. ("Joy Kie"); Golden Wheel and Joy Kie are the "International Defendants."[1] The Second Amended Complaint asserts claims for strict products liability, breach of warranty, negligence and failure to warn against Domestic and International Defendants. Hayley Skelton seeks damages for medical expenses and past and future pain and suffering, and Tyler Skelton seeks damages for loss of consortium.

Domestic Defendants individually moved for summary judgment on April 18, 2022.[2] [Doc. 99] (Infinité's Motion); [Doc. 100] (Action Traders' Motion);

---

[1] International Defendants are not parties to the motions before the Court and have not appeared in this action.

[2] Domestic Defendants simultaneously moved to exclude the testimony of Plaintiffs' expert. [Doc. 102]. The Court denied that motion on March 16, 2023. [Doc. 120]. Additionally, on May 16, 2022, Defendants moved for sanctions, arguing that Plaintiffs spoliated evidence by altering the subject bicycle and asking this Court to dismiss the

[Doc. 101] (Costco's Motion).  Domestic Defendants seek summary judgment on all claims, and they filed a consolidated statement of facts.  See [Doc. 99-2].  The Court thus analyzes the motions together.

## FACTUAL HISTORY

The Court derives the facts of this case from Domestic Defendants' Consolidated Statement of Undisputed Material Facts in Support of their Motions for Summary Judgment, [Doc. 99-2]; Plaintiffs' Response to Domestic Defendants' Consolidated Statement of Undisputed Material Facts in Support of their Motions for Summary Judgment, [Doc. 108, pp. 1–31]; Plaintiffs' Statement of Additional Material Facts that Present a Genuine Issue for Trial, [Doc. 108, pp. 32–33]; and Domestic Defendants' Reply in Support of Consolidated Statement of Undisputed Material Facts in Support of their Motions for Summary Judgment, [Doc. 112].  The Court also conducted its own review of the record.

The Local Rules of this Court require a respondent to a summary judgment motion to include with its responsive brief "[a] response to the movant's statement

_____

case as a result.  [Doc. 111].  The Court concluded that the bicycle had been altered at some point between June 2018, when Plaintiffs took photographs for a pre-suit claim, and March 2019, when the bicycle was inspected as part of that claim process.  [Doc. 121]. The Court determined that sanctions were warranted for this spoliation but declined to dismiss the case, instead deciding that the appropriate sanction was an adverse jury instruction on the spoliation.  Id.

of undisputed facts." N.D. Ga. Civ. R. 56.1(B)(2)(a). The Local Rules make clear that the Court will deem each of the movant's facts admitted unless the respondent refutes or objects to the fact or shows that the fact is either immaterial or unsupported by the record.[3] N.D. Ga. Civ. R. 56.1(B)(2)(a)(2). Further, in accordance with the Local Rules, this Court will not consider unsupported facts. The Court will, however, use its discretion to consider all facts the Court deems material after reviewing the record. For the purpose of adjudicating the instant Motions, the facts of this case are as follows.

## A.   Bicycle Purchase and Assembly

On May 19, 2018, Plaintiffs purchased a 2018 Boss.Three Ladies Bicycle from Costco in Atlanta, Georgia. [Doc. 112, p. 2]. The bicycle was in a sealed box when it was shipped to Costco from China and remained in a sealed box until purchased by Plaintiffs. Id. The 2018 Boss.Three Ladies Bicycle model passed independent, third-party testing pursuant to Consumer Product Safety Commission ("CPSC") standards prior to production and shipment to the United States. Id. at 3.

---

[3] Many of Plaintiffs' responses to Defendants' facts did not comply with this requirement of the Local Rules. Instead of directly refuting the fact, objecting to the fact's admissibility or contending that the fact is immaterial or unsupported, Plaintiff admitted the fact but simultaneously asserted a new fact. This approach is not contemplated by the Local Rules, which expressly permit a non-movant to file its own statement of material facts that present a dispute for trial.

The bicycle was not fully assembled when it was shipped.  <u>Id.</u> at 5.

Specifically, the front fender and front fender stay were not attached to the rest of

the bicycle; they were, however, connected to one another.  <u>Id.</u>  That is, the front

fender stay was already connected to the front fender with attachment hardware

(e.g., a bolt or a screw) when the bicycle was shipped and when it was delivered.

<u>Id.</u> at 7.  As a result, no additional assembly was necessary to connect the front

fender and front fender stay to one another.

Plaintiffs had to remove the bicycle from the box and partially assemble it

before use.  <u>Id.</u> at 5.  Tyler Skelton assembled the bicycle on May 20, 2018.  <u>Id.</u> at

6.  As part of the assembly, Tyler Skelton had to attach the front fender to the

bicycle's frame.  <u>Id.</u> at 7.  He also had to attach the front fender stay to each side of

the bicycle's front fork at its front tire hub.  <u>Id.</u>  The attachment hardware

connecting the front fender stay to the front fender was present when Plaintiffs

removed the bicycle from the packaging, as well as when Plaintiffs began their

bicycle ride on May 20, 2018.  <u>Id.</u> at 7.  Tyler Skelton testified that he did not

recall checking this attachment hardware, but he explained that it would have been

"fairly obvious" if the bolt had been loose.  <u>Id.</u> at 9.  Hayley Skelton did not tighten

or check any components on the bicycle prior to riding it on May 20, 2018.  <u>Id.</u>

The bicycle's owner's manual included final pre-ride check instructions, which provided, in relevant part, the following: "Finally, examine the bicycle. Make sure all accessories are attached and all quick releases, nuts and bolts have been tightened securely." Id. at 10. The bicycle's quick instruction sheets conveyed the same message. Id. at 11.

**B.      Bicycle Production and Express Warranty**

Domestic Defendants and International Defendants have different roles with respect to the production, sale and distribution of the 2018 Boss.Three Ladies Bicycle. Golden Wheel is the manufacturer of the 2018 Boss.Three Ladies Bicycle and owns the manufacturing facility in which the subject bicycle was produced. Id. at 12. At all times relevant to this action, Joy Kie was Golden Wheel's parent company. Id. International Defendants employ engineering staff who created and provided the mechanical and engineering drawings for the 2018 Boss.Three Ladies Bicycle model. Id. at 13.

Action Traders was the supplier/vendor of 2018 Boss.Three Ladies Bicycles for Costco. Id. at 14. Following production, Costco purchases the bicycles from Action Traders, and the bicycles are then shipped from China to Costco's distribution facilities in the United States. Id. at 16. Costco did not communicate,

have any business relationship or share any information with International

Defendants.  Id.

Infinité is the owner of the intellectual property used for the branding of the

2018 Boss.Three Ladies Bicycle model.  Id.  Infinité does not have employees or

payroll and does not generate any revenue.  Id. at 17.  Action Traders is the

international licensee of the Infinité name and intellectual property.  Id.  At all

times relevant to this action, Infinité had a branding agreement with Action Traders

allowing Action Traders to use the Infinité name and intellectual property on

bicycles, including the subject bicycle.  Id.

It appears that the bicycle's owner's manual contained an express warranty,

[Doc. 108-7], that also appeared online, [Doc. 108-8].  The parties dispute

Domestic Defendants' responsibilities for this express warranty.  Plaintiffs assert

that Infinité issued the express warranty.  [Doc. 112, p. 57]; see also [Doc. 108-7]

("[Infinité] warrants its bicycles to the original purchaser to be free from defects in

material and in workmanship . . . .").  Domestic Defendants counter that Infinité

simply owns the intellectual property for the bicycle's branding and that because it

has no employees, payroll or revenue, it is not responsible for the warranty.  [Doc.

112, p. 57].

Although Plaintiffs contend that Infinité issued the express warranty, they assert that Action Traders is actually responsible for fulfilling the warranty's terms. Id. at 58.  To support this assertion, Plaintiffs rely on the testimony of Shaun Morris, the representative of Infinité and Action Traders, who testified that Action Traders handles warranty claims.  [Doc. 108-6, p. 87].  Domestic Defendants deny that Action Traders was responsible for the warranty.  [Doc. 112, p. 58].  Furthermore, according to Domestic Defendants, the warranty is limited to the "original purchaser," which they contend is Costco.  Id. at 59.

## C.    May 20, 2018 Accident

Hayley Skelton rode the subject bicycle for the first time on the Proctor Creek Greenway Trail in Atlanta, Georgia, on May 20, 2018.  Id. at 18.  The accident occurred as Hayley Skelton rode from the northern end of the greenway south to the Bankhead Marta Station, turned around and headed back toward the northern end of the trail.  Id. at 19.  Plaintiffs testified that after Hayley Skelton crested the top of a hill and began to ride downward, she was ejected over the top of the bicycle's handlebars.  Id.  Plaintiffs are the only individuals who witnessed the accident.  Id. at 20.  At the time of the accident, they could not see the front fender or fender stay.  Id.

Tyler Skelton testified that, after the accident but while he was still on the greenway, he briefly looked at the bicycle and observed that the front fender stay had detached from the front fender and impacted the bicycle's front tire.  Id. at 21. Plaintiffs testified they do not know what caused the accident, how the fender stay detached from its connection to the front fender or what caused the fender stay to wedge against the bicycle's front tire.  Id.  The attachment hardware that connected the front fender to the front fender stay was not recovered.  Id.  The bicycle was removed from the greenway and delivered to Plaintiffs' home on the same day of the accident.  Id. at 20.

D.    **Cause of the Accident**

The parties dispute the cause of the accident, and the experts they designated provide conflicting explanations.  Plaintiffs' expert, John Schubert, concluded that a failed fastener caused the crash.  Id. at 24.  He specifically attributed the crash to a manufacturing defect (the attachment hardware) and a design defect (a nut-and-bolt design that was attached to the one-piece wraparound fender stay unit).  See [Doc. 108-5, p. 4].  Schubert testified that he does not know when, how or how quickly the attachment hardware that connected the front fender to the front fender stay came off the bicycle.  [Doc. 112, p. 27].  He also testified that he does not

know what the attachment hardware that connected the front fender to the front fender stay looked like or was supposed to look like.  Id. at 22.

Schubert proposed two alternative designs in his expert report.  [Doc. 102-1, pp. 6–7].  Schubert testified that his first alternative design would not prevent an accident from occurring in the event of a foreign object becoming entangled with the front wheel of a bicycle.  [Doc. 112, p. 39].  He also admitted that he had not tested or reviewed data to determine what would happen if a foreign object became entangled with his second alternative design.  Id. at 40.

Domestic Defendants' expert, Garrick Mitchell, opined that the accident was caused by a foreign object becoming entangled in the bicycle's front wheel and not by any defect in the bicycle itself.  Id. at 45.  Mitchell testified that he observed scratches on the spokes of the bicycle that were consistent with a foreign object becoming entangled in the wheel.  Id. at 34.  Schubert, on the other hand, testified that he did not check the spokes of the bicycle's front wheel for scratches.  Id. at 35.  None of the front wheel spokes were bent or broken when Mitchell examined the bicycle.  Id. at 56.  Schubert characterized the accident as a "pitchover crash" and testified that a foreign object becoming entangled in the front wheel of a bicycle can cause a pitchover crash.  Id. at 39.

According to Domestic Defendants, the record contains no evidence that they were aware of any other accidents involving a 2018 Boss.Three Ladies bicycle that occurred in a similar manner or that involved the front fender, front fender stay or corresponding attachment hardware.  Id. at 46.  Plaintiffs counter that Domestic Defendants were aware of an "identical" accident in 2017 involving a prior version, albeit one with the same fender design, of the 2018 Boss.Three Ladies Bicycle.  Id.

E.   **CPSC Investigation**

The CPSC completed an investigation of the May 20, 2018 accident and the 2018 Boss.Three Ladies Bicycle.[4]  Id. at 48.  Following the investigation, the CPSC determined that no further action was needed.  Id. at 50; see also [Doc. 99-

---

[4] Plaintiffs assert that this fact is inadmissible under 15 U.S.C. § 2074(b).  Under that statute, the CPSC's failure "to take any action or commence a proceeding with respect to the safety of a consumer product" is inadmissible.  "There is little case law interpreting 15 U.S.C. § 2074(b)."  Cummins v. BIC USA, Inc., 727 F.3d 506, 512 (6th Cir. 2013).  The cases that have interpreted this provision do not read it as barring evidence that the CPSC declined to regulate a given product but instead as precluding evidence that the CPSC "'completely failed to act.'"  Id. (quoting Morales v. Am. Honda Motor Co., 151 F.3d 500, 513 (6th Cir. 1998)); see also Johnston v. Deere & Co., 967 F. Supp. 578, 580 (D. Me. 1997) (interpreting § 2074(b) as "referring to the complete failure by the CPSC to engage in activity on a product" and clarifying that "[w]here the CPSC has engaged in activity, on the other hand, those activities are admissible even if they lead ultimately to a decision not to regulate").  The Court believes that the CPSC's investigation of the bicycle in this case "cannot be fairly characterized as a complete failure by the CPSC to engage in any activity on the safety of the product," Cummins, 727 F.3d at 514, and is accordingly not subject to exclusion under § 2074(b).

19].  The CPSC did not note any issues or violations of any regulations or laws regarding the bicycle, including its fender, fender stay or any corresponding attachment hardware.  [Doc. 112, p. 50].  Similarly, the CPSC did not initiate recalls or require changes to the bicycle.  Id.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A material fact is any fact that "is a legal element of the claim under the applicable substantive law which might affect the outcome of the case."  Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).  A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Ultimately, "[t]he basic issue before the court on a motion for summary judgment is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  Allen, 121 F.3d at 646 (quoting Anderson, 477 U.S. at 251).

The party moving for summary judgment bears the initial burden of showing that no genuine issue exists as to any material fact, "and in deciding whether the

movant has met this burden the court must view the movant's evidence and all

factual inferences arising from it in the light most favorable to the nonmoving

party."  Id.  After the movant satisfies this initial burden, the nonmovant bears the

burden of showing specific facts indicating that summary judgment is improper

because a material issue of fact does exist.  Id.  However, "[a] mere 'scintilla' of

evidence supporting the opposing party's position will not suffice; there must be

enough of a showing that the jury could reasonably find for that party."  Walker v.

Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (quoting Anderson, 477 U.S. at 251).

If the record taken as a whole cannot lead "a rational trier of fact to find for the

non-moving party, there is 'no genuine issue for trial.'"  Matsushita Elec. Indus.

Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First Nat'l Bank of

Ariz. v. Cities Serv. Co., 391 U.S. 253, 288 (1968)).

## ANALYSIS

Although Domestic Defendants moved individually for summary judgment,

the Court structures it analysis by Plaintiffs' claims rather than by individual

defendant.  Additionally, Plaintiffs indicated no objection to the grant of summary

judgment on several claims when responding to the Motions.  Specifically,

Plaintiffs did not object to granting summary judgment to Infinité on the claims for

strict products liability, negligence and failure to warn, [Doc. 109, pp. 9, 21]; as to

Action Traders, on the claims for negligence and failure to warn, [Doc. 106, p. 21];

and as to Costco, on the claims for strict products liability, negligence and failure

to warn, [Doc. 107, p. 6]. Accordingly, the only remaining claims are strict

products liability (against Action Traders only) and breach of warranty (against

each of the Domestic Defendants).

## A.     Strict Products Liability

A plaintiff bringing a claim for strict products liability must prove two

elements: "(1) the manufacturer's product was 'not merchantable and reasonably

suited to the use intended' when sold" and "(2) the product's condition when sold

was the proximate cause of the injury sustained." Graff v. Baja Marine Corp., 310

F. App'x 298, 305 (11th Cir. 2009) (quoting O.C.G.A. § 51-1-11(b)). A plaintiff

can establish the first element by showing that the product contained a

manufacturing defect or a design defect. Jones v. Amazing Prods., Inc., 231 F.

Supp. 2d 1228, 1236 (N.D. Ga. 2002). "In a case alleging strict liability, the

questions for jury resolution . . . are whether a product was defective, and if so,

whether the defect was the proximate cause of a plaintiff's injury." S K Hand Tool

Corp. v. Lowman, 479 S.E.2d 103, 106 (Ga. Ct. App. 1996). Action Traders

moves for summary judgment on the ground that there is no evidence of a

manufacturing defect, design defect or proximate causation.[5]  Action Traders also

asserts the affirmative defense of assumption of the risk.  The Court addresses

these arguments below.

### 1.     Manufacturing Defect

"A manufacturing defect is a defect that is 'measurable against a built-in

objective standard or norm of proper manufacture.'"  <u>Jones</u>, 231 F. Supp. 2d at

1236 (quoting <u>Banks v. ICI Ams., Inc.</u>, 450 S.E.2d 671, 673 n.2 (Ga. 1994)).

"[B]y definition, a manufacturing defect will always be identifiable as a deviation

from some objective standard or a departure from the manufacturer's specifications

established for the creation of the product." <u>Id.</u>  In other words, a manufacturing

defect is discernable "'by measuring the product in question against the benchmark

of the manufacturer's designs.'"  <u>O'Shea v. Zimmer Biomet Holdings, Inc.</u>, 342 F.

Supp. 3d 1354, 1359 (N.D. Ga. 2018) (quoting <u>In re Mentor Corp. ObTape</u>

<u>Transobturator Sling Prods. Liab. Litig.</u>, 711 F. Supp. 2d 1348, 1365 (M.D. Ga.

2010)).  The plaintiff need not "specify precisely the nature of the defect,"

although she must show that the product "did not operate as intended and [that]

---

[5] One basis for Action Traders' motion is that excluding the opinions of Plaintiffs' expert causes Plaintiffs' claims to fail.  [Doc. 100-1, pp. 14–16].  As noted previously, the Court denied the motion to exclude Plaintiffs' expert.  <u>See</u> [Doc. 120].  The Court does not address further Action Traders' argument concerning the exclusion of Plaintiffs' expert witness.

this was the proximate cause of [her] injuries." Williams v. Am. Med. Sys., 548

S.E.2d 371, 374 (Ga. Ct. App. 2001).

"It is important to note that, under Georgia law, it is not always necessary to

have expert testimony on the question of whether there is a manufacturing defect in

a product." Williams v. Mast Biosurgery USA, Inc., 644 F.3d 1312, 1319 (11th

Cir. 2011). In some cases, "lay testimony can provide sufficient evidence of

defect." Id. Similarly, "Georgia law permits the use of circumstantial evidence to

infer a manufacturing defect in some circumstances." Graff, 310 F. App'x at 305.

Those circumstances typically include cases where the product is destroyed or

unavailable for testing. Id. at 305–06. "The nature of the product, the complexity

of the facts and the nature of the purported product malfunction will determine the

nature of the evidence necessary" to show that a product did not "operate as

intended." Williams, 644 F.3d at 1320 (quoting Am. Med. Sys., 548 S.E.2d at

374).

Action Traders contends that Plaintiffs have provided no evidence to show

that the bicycle deviated from any manufacturing standards at the time of its

manufacture. Action Traders specifically argues that because Plaintiffs' expert has

not identified any manufacturing standards and does not know what the attachment

hardware looked like, Plaintiffs have not shown that the bicycle contained a

manufacturing defect.  Plaintiffs respond that both Schubert's expert testimony and circumstantial evidence show the existence of a manufacturing defect.

The question for the Court is whether Plaintiffs offered "sufficient evidence of a manufacturing defect to establish a genuine issue for trial."  Graff, 310 F. App'x at 305.  Plaintiffs' expert, Schubert, opined that the accident was caused by failed attachment hardware.  During his deposition, he testified that a photograph of the bike "as it would go into the box shows the fender stay attached to the fender" and that "there had to be an attachment for that photograph to be possible." [Doc. 108-3, p. 98].  Although it is not entirely clear, Schubert appears to be referring to a photograph of the packing and shipping procedure of the 2018 Boss.Three Ladies Bicycle.  Schubert's expert report includes this photograph (which is not of the subject bicycle but of the model generally) and notes that it "clearly shows that the front fender/fender stay attachment was designed to be completed at the factory."  See [Doc. 108-5, p. 5].  Schubert's theory seems to be that the bicycle as manufactured and delivered contains attachment hardware that securely connects the fender and the fender stay, but the subject bicycle's attachment hardware failed to securely connect these two parts.  As a result of this defect, according to Schubert, the front fender stay moved along the inside of the

front fender and jammed the tire, causing Hayley Skelton to be pitched over the handlebars.  Id. at 4.

Other than this photograph and Schubert's related testimony, the record does not contain substantial evidence about the "objective standard" or "manufacturer's specifications" for the 2018 Boss.Three Ladies Bicycle.  Jones, 231 F. Supp. 2d at 1236.  Plaintiffs' stance is ostensibly that because the attachment hardware failed, the bicycle necessarily contained a manufacturing defect.  Other courts have acknowledged that "[i]t is implausible to infer a manufacturing defect from nothing more than a broken product."  Graff v. Baja Marine Corp., No. 2:06-CV-68, 2007 WL 6900363, at *9 (N.D. Ga. Dec. 21, 2007), aff'd, 310 F. App'x 298 (11th Cir. 2009).  However, Plaintiffs are the non-movants, and as such, the Court must construe the evidence in their favor.  In that posture, the Court finds—although a close call—that a jury could conclude, based on Schubert's testimony, that there is sufficient evidence of a manufacturing defect.[6]

---

[6] Importantly, this is a case in which the parties have proffered experts with competing theories about causation.  The decision between conflicting expert testimony is one left to the jury.  See Kumho Tire Co. v. Carmichael, 526 U.S. 137, 153 (1999) (noting that "the jury must decide among the conflicting views of different experts" where such views are within "the range where experts might reasonably differ"); In re Chantix (Varenicline) Prods. Liab. Litig., 889 F. Supp. 2d 1272, 1297 (N.D. Ala. 2012) (observing that a "divergence of opinion is not a basis to exclude either point of view, but rather is a matter for a jury to consider").

To the extent that Domestic Defendants dispute the bases of Schubert's opinions, Georgia courts have permitted experts in products liability cases to rely on circumstantial evidence when theorizing about the cause of an accident or injury.[7]  It is undisputed that the hardware connecting the front fender to the fender stay was attached when Plaintiffs removed the bicycle from its packaging and when Hayley Skelton began the May 20, 2018 bike ride.  It is also undisputed that the hardware was not recovered from the scene of the accident.  Courts in Georgia have considered similar circumstances—that is, where the allegedly defective

---

[7] Plaintiffs argue that they have also presented circumstantial evidence of similar prior incidents, which may serve as circumstantial evidence of a defect.  See [Doc. 106, pp. 16–19].  Plaintiffs did not, however, present these similar prior incidents in their statement of material facts, instead discussing them in response to Defendants' facts and in their brief.  It is true that evidence of prior similar incidents may be used as circumstantial evidence of a manufacturing defect.  In the Eleventh Circuit, this is the "substantial similarity" doctrine, an evidentiary doctrine that

> applies when one party seeks to admit prior accidents or occurrences involving the opposing party, in order to show, for example "notice, magnitude of the danger involved, the [party's] ability to correct a known defect, the lack of safety for intended uses, strength of a product, the standard of care, and causation."

Heath v. Suzuki Motor Corp., 126 F.3d 1391, 1396 (11th Cir. 1997) (alteration in original) (quoting Jones v. Otis Elevator Co., 861 F.2d 655, 661 (11th Cir. 1988)).  Because this doctrine concerns the admissibility of evidence, it is governed by federal law and not state law.  Reid v. BMW of N. Am., 464 F. Supp. 2d 1267, 1271 (N.D. Ga. 2006).  Plaintiffs did not raise the prior incidents in their own statement of facts, and as a result, Defendants were unable to properly respond to the admissibility of these incidents.  The Court therefore declines to consider them in the resolution of the pending Motions but makes no ruling as to whether they would be admissible at trial.

instrument is missing or destroyed in the course of the accident—to be sufficient to present an issue for trial.

In Firestone Tire & Rubber Co. v. King, for instance, a plaintiff brought a products liability claim concerning a tire that blew out and caused a car accident. 244 S.E.2d 905, 908 (Ga. Ct. App. 1978). The portion of the tire in the immediate area of the blowout was not recovered after the accident. Id. The plaintiff's expert "could not specify the exact nature of the defect which, in their opinion, caused the tire to fail" and instead "merely speculated as to possibilities." Id. The Georgia Court of Appeals determined that it was not necessary for the plaintiff "to specify the nature of the defect in order to meet her burden of proof" because she could properly rely on circumstantial evidence to establish the existence of a manufacturing defect. Id. at 908–09. Particularly important was the fact that the alleged defect "could not be directly observed" because "the material in the area of the blowout was destroyed by the blowout" itself. Id. at 909. According to the court, ruling that "this prevented the [plaintiff] from establishing a prima facie case would be to insulate manufacturers from liability for defective products in any case where the defect causes its own destruction," a result that would be "totally untenable." Id.

Similarly, in Skil Corp. v. Lugsdin, the plaintiff was injured by a saw that was repaired immediately following his injury, meaning that neither party was able to examine the saw to determine whether it contained a defect.  309 S.E.2d 921, 923 (Ga. Ct. App. 1983).  However, evidence in the record established that the saw's blade guard failed to automatically close after the plaintiff's injury, and the plaintiff's expert testified "that the cause of the open guard was failure of the spring that should have closed the guard, and that such failure was a defect in the saw."  Id.  The court observed that "[c]ircumstantial evidence may be used to establish the existence of a manufacturing defect at the time the product left the manufacturer, even where the product is consumed or destroyed in the use that resulted in the plaintiff's injury."  Id. at 924 (citations omitted).  Consequently, even though the allegedly defective saw was repaired immediately following the accident, the court held that "there was sufficient evidence from which the jury could infer that the saw was defective when sold by the []manufacturer."  Id.

In this case, Plaintiffs argue that the failed attachment hardware—which, due to the accident that caused Hayley Skelton's injuries, is missing—is evidence of a manufacturing defect.  As the foregoing cases show, these facts do not prevent Plaintiffs from presenting their case; instead, they provide circumstantial evidence from which a jury could infer that the attachment hardware, or the manner in which

it connected the fender and fender stay, was defective.  Accordingly, the Court concludes that Plaintiffs have raised a sufficient question of fact as to the existence of a manufacturing defect to preclude summary judgment on this issue.

### 2.    Design Defect

While determining the existence of a manufacturing defect entails a "fairly straightforward" inquiry, a design defect "calls for the finder of fact to employ a loose balancing test to determine whether the manufacturer properly designed the product."  Jones, 231 F. Supp. 2d at 1236.  This balancing test is a "risk-utility analysis" that entails weighing "the risks inherent in a product design . . . against the utility or benefit derived from the product."  Banks, 450 S.E.2d at 673.  The relevant question is "whether the manufacturer acted reasonably in choosing a particular product design, given the probability and seriousness of the risk posed by the design, the usefulness of the product in that condition, and the burden on the manufacturer to take the necessary steps to eliminate the risk."  Id.  As a general rule, "the weighing of the risk-utility factors is to be done *by the trier of fact*." Dean v. Toyota Indus. Equip. Mfg., Inc., 540 S.E.2d 233, 237 (Ga. Ct. App. 2000). Accordingly, summary judgment "will rarely be granted in design defect cases where any of [the] elements is disputed."  Bryant v. BGHA, Inc., 9 F. Supp. 3d

1374, 1383 (M.D. Ga. 2014) (alteration in original) (quoting Ogletree v. Navistar

Int'l Transp. Corp., 522 S.E.2d 467, 470 (Ga. 1999)).

Action Traders does not appear to directly address Plaintiffs' claim that the

bicycle contains a design defect, instead arguing generally that Plaintiffs "failed to

provide any credible evidence of any defect whatsoever in the subject bicycle."

[Doc. 100-1, p. 12].  Plaintiffs point the Court to Schubert's expert report, in which

he opined that the fender of the 2018 Boss.Three Ladies Bicycle contained a

design defect and in which he proposed alternative designs.  See [Doc. 106]; see

also [Doc. 108-5, pp. 4, 6–7].

After reviewing the record in this case and the parties' arguments on this

issue, the Court does not believe that Action Traders has met its burden of showing

that it is entitled to judgment as a matter of law on the question of whether the

bicycle contained a design defect.  Action Traders did not argue that no issue of

disputed fact exists as to whether the benefit or utility of the bicycle's design

outweighed any risk associated with this design.  Yet a defendant seeking summary

judgment on a design defect claim must "show plainly and indisputably an absence

of *any* evidence that a product as designed is defective."  Ogletree, 522 S.E.2d at

470.  Plaintiffs, on the other hand, introduced expert evidence that the subject

bicycle contained a design defect that "has been known in the industry for

decades." [Doc. 108-5, p. 6]. At the very least, this evidence raises a jury question as to whether the bicycle contained a design defect. Accordingly, summary judgment is not warranted on this ground.

### 3.     Proximate Cause

A plaintiff in a products liability case "has the burden of proving the causal connection between the alleged design or manufacturing defect and [her] injury." Boswell v. Overhead Door Corp., 664 S.E.2d 262, 263 (Ga. Ct. App. 2008); Talley v. City Tank Corp., 279 S.E.2d 264, 269 (Ga. Ct. App. 1981) ("Unless the manufacturer's defective product can be shown to be the proximate cause of the injuries, there can be no recovery."). "Although expert opinions are often necessary to establish proximate cause in products liability cases, expert testimony is not always required where jurors are capable of determining whether injuries were caused by alleged defects in a product based on their own experiences." Williams v. Tristar Prods., Inc., 418 F. Supp. 3d 1212, 1228 (M.D. Ga. 2019). "As a general rule, issues of causation are for the jury to resolve and should not be determined by a trial court as a matter of law except in plain and undisputed cases." Ogletree v. Navistar Int'l Transp. Corp., 535 S.E.2d 545, 548 (Ga. Ct. App. 2000).

Action Traders argues that the record contains no evidence that Hayley Skelton's injuries were "uniquely caused or worsened by the supposed design or manufacturing defect, in the sense that some other design would have actually performed any differently." [Doc. 100-1, p. 16]. Plaintiffs respond that they have provided "both expert testimony as well as circumstantial evidence about how the manufacturing defect and design defect resulted in Hayley Skelton being thrown onto the concrete." [Doc. 106, pp. 20–21].

Action Traders has not cited legal authority for the proposition that a manufacturing or design defect must "worsen" a plaintiff's injuries for that plaintiff to show proximate causation. Instead, Georgia courts require a plaintiff in a products liability action to establish that "the proximate cause of the injury was a defect which existed when the product was sold." Whitehead v. Green, 879 S.E.2d 698, 710 (Ga. Ct. App. 2022) (quoting Carmical v. Bell Helicopter Textron, Inc., a Subsidiary of Textron, Inc., 117 F.3d 490, 494 (11th Cir. 1997)). In turn, "[a] proximate cause is that which, 'in the natural and continuous sequence, unbroken by other causes, produces an event, and without which the event would not have occurred.'" Id. at 710–11 (quoting Maynard v. Snapchat, Inc., 870 S.E.2d 739, 746 (Ga. 2022)).

As detailed above, Plaintiffs have introduced both expert and circumstantial evidence from which a jury could infer that the bicycle contained a defect (namely, one related to the attachment hardware connecting the front fender to the front fender stay).  A jury could also infer that this defect resulted in the front stay jamming the tire and thereby caused Hayley Skelton to be pitched over the handlebars.  Although Defendants' expert posits that something *other* than a defect was the proximate cause of the crash—namely, a foreign object becoming entangled with the front wheel—Plaintiffs have presented sufficient evidence to raise a dispute of fact about whether a defect in the bicycle was the proximate cause of Hayley Skelton's accident.  Action Traders is therefore not entitled to summary judgment on this basis.

### 4.    Assumption of the Risk

A defendant relying on the affirmative defense of assumption of the risk must prove three elements:  the plaintiff (1) had actual knowledge of the danger, (2) understood and appreciated the risks associated with such danger and (3) voluntarily exposed herself to those risks.  Vaughn v. Pleasant, 471 S.E.2d 866, 868 (Ga. 1996).  The first factor, whether the plaintiff had knowledge of the danger, "does not refer to a comprehension of general, non-specific risks." Cornwell v. Chambers of Ga., Inc., 491 S.E.2d 132, 134 (Ga. Ct. App. 1997).

Instead, "the knowledge that a plaintiff who assumes the risk must subjectively possess is 'that of the specific, particular risk of harm associated with the activity or condition that proximately causes injury.'" Id. (quoting Vaughn, 471 S.E.2d at 868).

Assumption of the risk is a valid defense to a strict products liability action. Bodymasters Sports Indus., Inc. v. Wimberley, 501 S.E.2d 556, 560 (Ga. Ct. App. 1998). "As a general rule," however, "whether a party assumed the risk of [her] injury is an issue for the jury that should not be decided by summary judgment unless the defense is conclusively established by plain, palpable and undisputed evidence." Turner v. Sumter Self Storage Co., 449 S.E.2d 618, 620 (Ga. Ct. App. 1994).

Action Traders claims that it is entitled to summary judgment on the strict products liability claim because Hayley Skelton assumed the risk of falling. According to Action Traders, Plaintiffs failed to introduce evidence of any defect, and thus Hayley Skelton "merely fell off . . . a bicycle while riding it." [Doc. 100-1, p. 21]. However, this argument depends on the underlying premise that Plaintiffs lack evidence of any defect in the bicycle. The Court concluded above that Plaintiffs introduced sufficient evidence to create a jury question on this issue. As such, Action Traders must show that Hayley Skelton had actual knowledge of

the particular risk associated with riding a potentially defective bicycle.  Action

Traders failed to make this showing.  In the absence of "plain, palpable and

undisputed evidence," <u>Turner</u>, 449 S.E.2d at 620, the Court declines to hold that

the doctrine of assumption of the risk bars Plaintiffs' claims.

* * *

For the foregoing reasons, Action Traders' Motion for Summary Judgment

as to Plaintiffs' claim for strict products liability is **DENIED**.

## B.    Breach of Warranty

To recover for a breach of express or implied warranty under Georgia law, a

plaintiff must show privity between herself and the defendant.  <u>Wheeler v.

Novartis Pharms. Corp.</u>, 944 F. Supp. 2d 1344, 1354 (S.D. Ga. 2013).  As a general

rule, the end user of a product cannot recover "on any express or implied warranty

when the manufacturer sells the product to the original consumer, e.g. a retailer."

<u>Lee v. Mylan Inc.</u>, 806 F. Supp. 2d 1320, 1326 (M.D. Ga. 2011).  However,

"privity of contract between the manufacturer and ultimate consumer is established

when the manufacturer extends an express warranty to the ultimate consumer."  <u>Id.</u>

Plaintiffs alleged in the Second Amended Complaint that Defendants

"expressly and impliedly warranted" that the subject bicycle "was of merchantable

quality" and "free from defects."  [Doc. 43, p. 8].  The Court will address below

28

the claim for breach of express and implied warranty as to each Domestic Defendant.

### 1.    Infinité

Infinité moves for summary judgement on Plaintiffs' claim for breach of express and implied warranty on the basis that Plaintiffs lack privity.  Plaintiffs contend that this argument is inapposite because Infinité issued an express warranty, for which privity is not required.  It is true that privity is established where a *manufacturer* extends an express warranty to the end user.  But it is undisputed in this case that Infinité is not a manufacturer.  Infinité merely owns the intellectual property that is used to brand the subject bicycle but has no employees and generates no revenue.  In this posture, the privity requirement remains necessary to recover on an express warranty, and Plaintiffs have not shown that they have privity with Infinité.  Summary judgment is warranted on the claim for breach of express warranty.

Because Plaintiffs did not respond to Infinité's arguments as to the claim for breach of implied warranty, the Court deems that claim abandoned.  Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp., 10 F.3d 1563, 1568 (11th Cir. 1994) (affirming the district court's decision not to address an issue that was not raised in opposition to a motion for summary judgment);

Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp., 182 F.3d 888, 892 (Fed. Cir. 1999)

(discussing Eleventh Circuit Court of Appeals precedent as setting forth the

"unremarkable proposition that assertions made in the pleadings" but "not made in

opposition to a motion for summary judgment[] need not be considered by the

district court"); Crayton v. Valued Servs. of Ala., LLC, 737 F. Supp. 2d 1320,

1331 (M.D. Ala. 2010) (finding that a plaintiff abandoned her claims where she

failed "to address [d]efendant's arguments respecting these claims or otherwise

provide support for them in her response to the motion for summary judgment").

Accordingly, summary judgment is **GRANTED** to Infinité on the breach of

warranty claim.

### 2. Action Traders

Action Traders seeks summary judgment on Plaintiffs' claim for breach of

express and implied warranty on the grounds that Plaintiffs failed to show privity.

Specifically, Action Traders argues that Plaintiffs purchased the bicycle from

Costco and not from Action Traders, which shows the absence of any privity of

contract.[8]  Plaintiffs argue that Action Traders is liable for breach of express

warranty despite the purported lack of privity.[9]

The record in this case contains many disputed facts about the express

warranty on the subject bicycle.  Plaintiffs contend that Action Traders is

responsible for fulfilling the warranty, and Action Traders' own representative

testified that Action Traders completes any warranty work and handles any

warranty claims.  [Doc. 108-6, p. 87].  Action Traders, on the other hand, appears

to deny any responsibility for the express warranty.  [Doc. 112, p. 85].

Action Traders also contends that the warranty's language—"[Infinité]

warrants its bicycles to the original purchaser"—means that the warranty is limited

---

[8] The Court notes that the only case law on this issue cited by Action Traders in its initial brief addressed implied warranties, not express warranties. Lamb v. Ga.-Pac. Corp., 392 S.E.2d 307, 309 (Ga. Ct. App. 1990) (analyzing a claim for breach of the implied warranty of merchantability and finding that "there [was] no evidence of any express warranty made by appellee which would extend to appellant as the ultimate purchaser"); Gill v. Blue Bird Body Co., 147 F. App'x 807, 809–10 (11th Cir. 2005) (analyzing the privity requirement for implied warranty claims under Georgia law).  As noted previously, the privity requirement for express warranties issued by a manufacturer is treated differently than it is for implied warranties.  As a general rule, a plaintiff "cannot recover on the implied or express warranty, if any, arising out of the prior sale by the defendant to the original purchaser, such as [the] distributor or retailer from whom [the] plaintiff purchased the product." Evershine Prods., Inc. v. Schmitt, 202 S.E.2d 228, 231 (Ga. Ct. App. 1973).  "This does not mean, however, that there can be no warranties if the manufacturer or producer makes an express warranty to the ultimate consumer." Id.

[9] As with Infinité, Plaintiff appears to abandon the claim for breach of implied warranty against Action Traders.  Summary judgment is thus due to Action Traders on that claim.

to Costco, as the "original purchaser," rather than Plaintiffs, as the ultimate

consumers.  Id. at 59.  The Court is not persuaded that this interpretation of the

warranty language disposes of Plaintiffs' claim.  The warranty also contains the

following language:

> If you discover a defect within the warranty period, you must
> follow this procedure:
>
> A)   Bring the bicycle to *the original dealer from whom it was
>      purchased*.  If the dealer [from] whom you purchased this
>      bicycle determines upon examination that either a repair
>      or replacement is justified and such determination is
>      verified by [Infinité], repair or replacement will be made
>      in accordance with the warranty.
>
> B)   When making claim under warranty, you must also bring
>      to the *original selling dealer* a copy of the sales receipt or
>      proof of original purchase.

[Doc. 108-7, p. 2] (emphasis added).  If the "original purchaser" is Costco, not the

ultimate consumer, it is unclear who the "original dealer" or the "original selling

dealer" might be.  Insofar as Action Traders claims that the "original purchaser" is

Costco, it is equally possible that the "original purchaser" is the end user, and the

"original dealer" is the retailer from whom the end user purchased the product

(here, Costco).  Under that reading, it would not be dispositive in this case that

Plaintiffs purchased the bicycle from Costco rather than Action Traders.  Frey v.

Bayer Corp., 499 F. Supp. 3d 1283, 1293 (M.D. Ga. 2020) ("[I]f a manufacturer

extends an express warranty to the ultimate consumer, the privity requirement is

met even if the ultimate consumer received the product through an intermediate seller.").

As such, Action Traders' conclusory assertion that the warranty is "exclusively limited to the original owner/purchaser of the bicycle, which is Costco" is not enough to show that it is entitled to judgment as a matter of law on the express warranty claim.  Summary judgment is thus **DENIED** on the claim for breach of express warranty and **GRANTED** on the claim for breach of implied warranty.

### 3.    Costco

Although Costco seeks summary judgment on "all" of Plaintiffs' claims, [Doc. 101, p. 1], Costco presented no arguments in its brief as to why summary judgment was warranted on Plaintiffs' claim for breach of express or implied warranty.  Costco asserts in reply that its arguments "apply to all claims."[10]  [Doc.

---

[10] For instance, Costco argues in its reply brief that "Plaintiffs do not contest that breach of warranty claims require evidence of a defect and causation," [Doc. 114, p. 5], and cites to a case applying Minnesota law for the elements of a breach of warranty claim, see In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig., No. 4:13-cv-360, 2015 WL 6159478, at *2 (M.D. Ga. Oct. 20, 2015) (citing Daigle v. Ford Motor Corp., 713 F. Supp. 2d 822, 825 D. Minn. 2010)).  Of course, Minnesota law does not apply to this case, and again, Costco did not raise this issue in its initial brief.  But to the extent that Costco claims it is entitled to summary judgment because Plaintiffs failed to show defect and causation, the Court's earlier analysis as to Action Traders on those points applies equally to Costco, and thus this argument is without merit.

114, p. 3].  However, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.  Rather, the onus is upon the parties to formulate arguments . . . ."  <u>Resol. Tr. Corp. v. Dunmar Corp.</u>, 43 F.3d 587, 599 (11th Cir. 1995) (citation omitted).  As the movant, Costco bears the burden of showing that it is entitled to judgment as a matter of law.  Because Costco failed to address the breach of warranty claim in its motion, summary judgment is **DENIED**.

**CONCLUSION**

For the reasons stated above, Infinité's Motion for Summary Judgment [Doc. 99] is **GRANTED** in its entirety, Action Traders' Motion for Summary Judgment [Doc. 100] is **GRANTED IN PART AND DENIED IN PART** and Costco's Motion for Summary Judgment [Doc. 101] is **GRANTED IN PART AND DENIED IN PART**.  Plaintiffs' remaining claims are the following:  (1) breach of express and implied warranty against Costco; (2) breach of express warranty against Action Traders; and (3) strict products liability against Action Traders.

The parties are **HEREBY ORDERED** to file the consolidated pretrial order required by Local Rule 16.4 no later than twenty-one days from the entry of this Order.  The parties are notified that a failure to comply with this Order may result

34

in sanctions, including dismissal of the case or entry of default judgment.  In the event a consolidated pretrial order is not filed, the Clerk is **DIRECTED** to submit the case at the expiration of the applicable time period.

      **SO ORDERED** this 17th day of March, 2023.

J. P. BOULEE
United States District Judge